PER CURIAM.
This is an appeal from an order of the deputy commissioner determining that Florida Farm Bureau was the insurance carrier covering the employer, Hilliard Brothers of Florida, Inc., (“Hilliard Bros.”) on the date of the accident. We reverse.
The sequence of events in this case is somewhat complex. United States Fidelity & Guaranty Company (“USF&G”) was the insurance carrier for Hilliard Bros., providing workers’ compensation and other types of insurance, during 1977 and early 1978. *838 Because the worker’s compensation insurance was due to expire in February 1978, but the other lines of insurance would not expire until May 9, 1978, USF&G agreed to extend the workers’ compensation insurance to May 9, 1978, so that all coverages would end at the same time. Subsequently, USF&G’s agent orally agreed to bind insurance coverage from May 9, 1978, until June 9, 1978, and again until July 9, 1978.
Meanwhile, Hilliard Bros., through an insurance consultant, Mr. Bell, accepted bids for all lines of insurance coverage from USF&G, Florida Farm Bureau, and another insurance company. On July 6, 1978, Mr. Bell advised Hilliard Bros, that his analysis showed that Florida Farm Bureau had submitted the lowest bid. Mr. Joe Marlin Hilli-ard contacted Mr. Gillingham, the agent for USF&G, cancelled the oral binder with that company, and secured an oral binder with Florida Farm Bureau through its agent. Subsequently, Florida Farm Bureau issued a letter of assumption, dated July 20, 1978. This letter was sent to USF&G and to the Department of Commerce and stated that Florida Farm Bureau was willing to assume all obligations and liabilities for Hilliard Bros., “covered by our policy number WC 614377 effective July 1, 1978 .. . This is a ‘letter of intent’ to only provide you notice of our effective date and to effect coverage upon termination of your policy. Duplicate coverage is not intended.”
Subsequently, a possible error was discovered regarding the bids. On about July 21 it was determined that USF&G rather than Florida Farm Bureau had actually been the lowest bidder. Sometime between July 21 and July 23, Mr. Hilliard and Mr. Bell called Gillingham, the agent for USF&G, and requested another oral binder. At that time, Gillingham refused to go back on binder unless he was assured of the Hilliard account. The record reflects that a few days later, but before the day of the accident, Gillingham spoke with Bell and Mr. Hilliard and was informed that USF&G had been awarded the account and Gillingham agreed to bind the coverage. Gillingham testified that he called the USF&G office in Tampa and advised that the coverage had been bound. On July 24 Mr. Hilliard called the agent for Florida Farm Bureau and instructed him to cancel that company’s binder.
On July 25, 1978, an accident occurred in which one Hilliard Bros, employee was killed and another was disabled. There is no dispute as to the compensability of this accident. Initially, USF&G investigated the accident, but on July 31, 1978, through an underwriter, Mr. Uniacke, USF&G filed a notice of termination effective July 1, 1978, with the Department of Commerce. On August 1, 1978, Florida Farm Bureau filed a notice of termination with the Department.
On October 2, 1978, a bill for the premium for coverages from May 9, 1978 to May 9, 1979, was sent from USF&G to Hilliard Bros. This included a premium of $6066.00 for workers’ compensation coverage. The next day a cancellation/return premium memo representing $4668.00 of the workers’ compensation premium was sent to Hilliard Bros. Hilliard Bros, paid the full premium and Mr. Hilliard stated he refused to accept USF&G’s credit memo. Florida Farm Bureau did not bill Hilliard Bros.
The Deputy Commissioner determined that Florida Farm Bureau was on the risk on the date of the accident for the following reasons: (1) although Hilliard Bros, requested a binder from USF&G after discovering the bidding error, the coverages were never awarded because a condition precedent, that coverage for all lines of insurance be awarded USF&G, was not fulfilled and no notice of assumption was published; (2) because of Florida Farm Bureau’s letter of assumption, which purported to be effective July 1, 1978, pursuant to Section 440.42(2), USF&G’s notice of termination was effective as of July 1, 1978, to cancel the policy which had expired in February 1978, and all subsequent binders; (3) because of the letter of assumption and USF&G’s effective termination by letter of July 31, 1978, dual coverage was eliminated and Florida Farm Bureau could not effectively terminate coverage in less than thirty *839 days, under Section 440.42(2). The deputy stated that, although ordinarily there might have been a failure of a condition precedent as to Florida Farm Bureau, justifying that company’s rescission from the agreement, “in light of the letter of assumption the statutory provisions take precedence and the thirty days is required for the termination of coverage.” For several reasons, we think the deputy erred.
First of all, the deputy’s finding that a condition precedent to the July 24 oral binder with USF&G was not satisfied is not supported by competent substantial evidence in the record. Gillingham testified that both Mr. Bell, the insurance consultant, and Mr. Hilliard, an officer of Hilliard Bros., called back following his initial refusal to bind and informed him that USF&G had the account, to which Gillingham replied that he would bind the coverage. A conflict existed as to whether Gillingham communicated the news to the Tampa office of USF&G. Gillingham testified he called Mr. Uniacke, an underwriter for USF&G, and informed him of the binder. Mr. Uniacke, on the other hand, said he did not speak with Gillingham between June 1978 and his receipt of Florida Farm’s letter of assumption and he filed the termination notice after receiving that letter. The deputy may have resolved this particular credibility issue in favor of Uniacke. However, Mr. Gillingham was an agent of USF&G with authority to bind coverage, according to his own and Mr. Uniacke’s testimony.[1] When he orally bound the coverage, in late July, Gillingham was aware of the confusion regarding the bids, and he had been told that USF&G had the account. In short, the record reflects that any condition precedent to the effectiveness of the binder was fulfilled.
The deputy attributed a great deal of significance to the letter of assumption issued by Florida Farm Bureau. This is understandable, especially since the letter was filed with the Department of Commerce and constituted the latest written evidence that a policy had been issued. Under the circumstances, however, there is no reason to attribute greater significance to the letter of assumption than to the subsequent binder given by the agent of USF&G. While we are aware of one Florida case in which it was stated that a binder is not a policy of insurance, Frank v. Traveler’s Indemnity, 310 So.2d 418 (Fla.3d DCA 1975), that case is distinguishable from the instant case.[2] In our opinion, the statutory presumption of Section 440.42(2)[3] could be applied to the competing binders in this case, with the result that the last binder, given by USF&G, having in a sense the later effective date, would be presumed in force. This was the status of the carriers on the date of the accident.
REVERSED.
McCORD and SHIVERS, JJ., and ERNEST E. MASON (Circuit Judge, Retired), Associate Judge, concur.

. Cf. Fidelity & Casualty Company v. Britt, 393 So.2d 41 (FIa.3d DCA 1981).

. In Traveler’s, the agent had binding authority, but no authority to issue a complete policy, and the accident occurred after the 60-day period of the binder had elapsed.

. Section 440.42(2) provides, in pertinent part: However, when duplicate or dual coverage exists by reason of two different carriers having issued policies of insurance to the same employer securing the same liability, it shall be presumed that only that policy with the later effective date shall be in force and that the earlier policy terminated upon the effective date of the latter.
Kincade v. Harmel Constructors, Inc., 3 FCR 298 (1958), cited by appellees, was decided under a version of § 440.42 which did not contain this presumption regarding dual coverage.